IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ADRIANA HEDDEN,** *Plaintiff,* <br><br> v. <br><br> **NAVY FEDERAL CREDIT UNION; and JOHN DOE,** *Defendants.* | **CIVIL ACTION** <br> **NO. 24-3254** |

**Baylson, J.**                                                                                            **October 29, 2024**

### MEMORANDUM RE: MOTION TO DISMISS

Hedden seeks a declaration on the invalidity of a fraudulent loan made in her name, which her bank, Defendant Navy Federal Credit Union ("Navy Federal"), considers overdue, and subsequent damages. Navy Federal is holding Hedden responsible for repayment of the fraudulent loan because Hedden fell victim to a scammer—purporting to be a Navy Federal employee—to whom she transferred the loan proceeds in an attempt to facilitate resolution of the fraud.

While characterizing Hedden's situation as "unfortunate" and "regrettable," Navy Federal insists that Hedden's "true claim lies against the scammer, not Navy Federal." ECF 9-1 at 1. But Hedden's Amended Complaint paints a picture of misbehavior beyond only that of the scammer. Navy Federal cannot push the blame entirely to the scammer. For the reasons stated below, Navy Federal's motion to dismiss is granted in part and denied in part.

I.   **FACTUAL ALLEGATIONS**

Plaintiff Adriana Hedden ("Hedden") has been a banking customer of Navy Federal for about 13 years. Am. Compl. ¶ 6, ECF 6.

1

### A. The Scam: Hedden's March 24, 2024 Interactions With John Doe, A Purported Navy Federal Representative

#### 1. Doe, A Purported Navy Federal Representative, Contacts Hedden

On March 24, 2024, Hedden received a text message from 858-666-1787 that read: "NFC – Did you attempt a Zelle transfer for the amount of $500.00 at 4:39 PM on 3/29/24. Please Text YES/NO To verify transaction or text STOP to opt out. Text HELP for help. For Security purposes a call will be sent out to verify this transaction." Id. ¶ 13. Five minutes later, Hedden received a call that appeared to come from Navy Federal's customer service number. Id. ¶ 14. Hedden answered the call and John Doe ("Doe") introduced himself as a Navy Federal representative who was investigating a fraudulent loan (the "Loan") taken out in Hedden's name. Id. ¶ 15.

Hedden had not applied for or authorized the Loan. Id. ¶ 25. Nonetheless, Hedden's account showed a deposit for $4,960 in Loan proceeds. Id. ¶ 24. Doe told Hedden that the Loan proceeds were deposited in her account through a third-party called "Cash App" and that someone had attempted to transfer the proceeds from her account to an unknown user. Id. ¶¶ 15–16.

During the call, Doe told Hedden that her Navy Federal mobile application ("App") password was changed due to security protocols and provided her with a new password. Id. ¶¶ 17–19; Ex. E, ECF 6-5. Although Hedden had not changed her password, nor had she received a notification from Navy Federal regarding suspicious account activity. Am. Compl. ¶ 19. Hedden entered the password that Doe gave her and logged in to her account. Doe then told Hedden that he needed to send her two "push" notifications to her iPhone through the Navy Federal App to

verify her IP location and to complete the "fraud investigation." Id. ¶ 21; see Ex. F, ECF 6-6. Doe sent the push notifications.[1] Am. Compl. ¶ 22.

Hedden challenged Doe to verify that he worked for Navy Federal. Id. ¶ 23. Doe told Hedden the amounts and dates of transactions and deposits in her account. Id. Hedden also visually confirmed that her Navy Federal account showed a deposit for $4,960 and thus believed Doe's purported identity.[2] Id. ¶ 24.

### 2. Doe Provides Hedden With Instructions To Purportedly Facilitate Return Of The Loan, And Disappears After The Funds Are Transferred

Doe told Hedden that Cash App requested that she return the Loan proceeds via Apple Pay to a Chime card. Id. ¶ 27. Though Hedden questioned the necessity of this method of transfer, Doe assured Hedden that the transfer would allow Cash App to confirm that the Loan was fraudulent and resolve the dispute. Id. ¶ 28. Doe provided Hedden with instructions on how to transfer the proceeds to a Chime card. Id. ¶ 29. Guided by Doe's direction, Hedden did so. Id. ¶ 30. Doe then put Hedden on hold indefinitely, and the call eventually ended. Id. ¶ 31.

## B. The Aftermath: Hedden's Post-Scam Communications

### 1. Following Her Phone Call With Doe, Hedden Calls Navy Federal

After her call with Doe, Hedden called the Navy Federal customer service number from which Doe had seemingly called her. Id. ¶ 32. Hedden spoke to an actual Navy Federal Representative (the "Representative"). Id. ¶ 33. Navy Federal had no record of Hedden and Doe's conversation; the Representative informed Hedden that she was scammed. Id. ¶¶ 33–34.

---

[1] Doe was able to do so because either he breached Navy Federal's information technology ("IT") system or was an authorized user of the IT system who was illegitimately using it. Am. Compl. ¶ 26.

[2] The loan proceeds were in Hedden's account when she was on the phone with Doe. Id. ¶ 24.

The Representative examined the devices logged in to Hedden's App. Id. ¶ 35. The device record showed that an unknown and unauthorized Samsung device, which did not belong to Hedden, was logged into her account. Id. ¶¶ 35–36. The Representative removed the device, reset Hedden's App login, and provided Hedden with new banking account numbers. Id. ¶ 37.

### 2. Hedden Instructs Navy Federal To Stop The Transfer, But It Does Not

The Loan disbursement to Hedden's account and transfer of proceeds to the Chime card were still pending, which meant Navy Federal could have contacted Chime and Apple Pay to stop the transfers. Id. ¶¶ 38–39; see Ex. G, ECF 6-7. Hedden requested that Navy Federal stop the transfer of funds. Am. Compl. ¶ 41. Navy Federal failed to do so. Id. ¶ 42.

Navy Federal provided Hedden with a Declaration of Forgery/Fraud, and instructed her to complete the Declaration and return it to Navy Federal by mail. Id. ¶ 43. Hedden did so. Id. ¶ 44.

### 3. Navy Federal Denies Hedden's Fraud Claim

On April 29, 2024, Navy Federal notified Hedden that her fraud claim was denied. Id. ¶ 48. Navy Federal sent Hedden the Loan promissory note (the "Note"). Id. ¶ 49. This was the first time Hedden saw the Note, which contained a log of the actions Doe took while posing as Hedden. Id. ¶¶ 49–50. According to the log, the Note was e-signed by an IP addressed in Hammonton, NJ.[3] Id. ¶¶ 51–52. When the Note was signed, Hedden was in Bensalem, PA, from which she normally logged into her Navy Federal account—*not* in Hammonton, NJ.[4] Id. ¶¶ 53–55.

---

[3] Navy Federal "authenticated" and approved the loan application made in Hedden's name after only 16 seconds. Id. ¶ 56.

[4] Navy Federal did not create automatic security alerts or implement an account hold based on the unusual location of the activity on Hedden's account. Id. ¶¶ 58–60.

Hedden repeatedly sought information from Navy Federal about its investigation. Id. ¶¶ 64, 67. Navy Federal told her that the information was "limited" and declined to provide contact information for the legal department. Id. ¶¶ 65, 67.

Navy Federal has sent Hedden bills demanding full repayment of the Loan and considers Hedden overdue on payments for the Loan. Id. ¶¶ 71, 73. Navy Federal deduced an auto-payment in the amount of the Loan from Hedden's account. Id. ¶ 72. This auto-payment has since been reversed. Id. ¶ 73.

## II. PROCEDURAL HISTORY

Hedden filed this case against Navy Federal and John Doe in the Court of Common Pleas of Bucks County. ECF 1-1. On July 23, 2024, Defendants removed the case to the United States Courts of the Eastern District of Pennsylvania. ECF 2-2; ECF 2-3. On August 13, 2024, Hedden filed an Amended Complaint seeking declaratory judgment (Count I) and alleging breach of contract as to Navy Federal (Count II), negligence as to Navy Federal in the alternative (Count IV), fraud as to Navy Federal in the alternative (Count VI), fraud as to John Doe (Count V), aiding and abetting fraud as to Navy Federal (Count VII), violation of the Truth in Lending Act (Count VIII), and violation of the Fair Debt Collection Practices Act (Count IX). Navy Federal moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 9-1.

## III. STANDARD OF REVIEW

In considering a 12(b)(6) motion to dismiss, this Court must accept all factual allegations as true and view them in the light most favorable to the plaintiff. Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020). To survive a motion to dismiss, a plaintiff must plead facts that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011).

A complaint is insufficient if it suggests the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555).

IV. **DISCUSSION**

  A. **Hedden's Declaratory Judgment Claim Is Not Duplicative And States A Claim**

Hedden seeks a declaratory judgment that (1) Doe fraudulently and illegally applied for the Loan and forged Hedden's signature, (2) the Loan is null and void, (3) Hedden does not owe Navy Federal obligations under the Loan, and (4) Navy Federal bears the risk of loss resulting from the Loan. Id. ¶ 83. Navy Federal argues that Hedden's declaratory judgment claim should be dismissed because it is duplicative of her breach of contract claim. ECF 9-1 at 4; ECF 11 at 1. Hedden argues that her declaratory judgement and breach of contract claims are distinct since the declaratory judgment claims seeks to establish that Hedden did not apply for the Loan, whereas the breach of contract claim alleges that Navy Federal did not limit her lability as required under the Terms. ECF 10 at 5–6.

Hedden's declaratory judgment claim (Count I) is not strictly duplicative of her breach of contract claim (Count II). See Greenwald Caterers Inc. v. Lancaster Host, LLC, 599 F. Supp. 3d 235, 268 (E.D. Pa. 2022) (Smith, J.). Count I does not seek a judgment declaring that Navy Federal breached its obligations to Hedden under the Terms. Rather, Count I seeks a judicial determination about the validity of the Loan itself. These Counts are distinct.

Further, Hedden has stated a claim for declaratory judgement. Under Pennsylvania's Declaratory Judgment Act (the "Act"), a party can seek a declaration of her rights. 42 Pa.C.S.A. § 7531 et seq. The Act "is broad in scope and is to be liberally construed," Clark, Inc. v. Hamilton T'Ship, 128 Pa. Cmwlth. 31, 35 (1989), so long as there is imminent and inevitable controversy, see Pa. Tpk. Comm'n v. Hafer, 142 Pa. Cmwlth. 502, 507 (1991). Hedden

6

has stated a claim on which relief can be granted by identifying an imminent and inevitable controversy and seeking a declaration of her rights. Navy Federal's motion to dismiss Count I is denied.

### B. Hedden States a Claim for Breach of Contract

Hedden alleges that Navy Federal's attempt to hold her liable for the Loan is a breach of contract under the Mobile Banking, Online Banking, and Bill Pay Terms and Conditions and Important Disclosures (the "Terms"), which limited her liability to at most $500. Am. Compl. ¶¶ 9–11; ECF 10 at 9. The Terms are as follows:

> **10. Your Liability for Unauthorized Electronic Funds Transfers**
> **Notify us AT ONCE if you believe:**
> - your account may have been accessed without your authority;
> - your card, code, or password has been lost or stolen;
> - someone has transferred or may transfer money from your account without your permission; or
> - an electronic funds transfer has been made without your permission using information from your check or your MMSA check.
>
> The best way to minimize your possible loss is to telephone or contact us through our eMessage system at **navyfederal.org**, although you may advise us in person or in writing. If you do not notify us, you could lose all the money in your account (plus your maximum line of credit amount).
>
> If you tell us within two (2) Business Days after you discover your password or other means to access your account has been lost or stolen, your liability is no more than $50.00 should someone access your account without your permission. If you do not tell us within two (2) Business Days after you discover such loss or theft, and we can prove that we could have prevented the unauthorized use of your password or other means to access your account if you had told us, you could be liable for as much as $500.00.

ECF 6-1, Ex. A to Am. Compl. at § B.10.

Navy Federal argues that Hedden's breach of contract claim fails because Doe's access to Hedden's account was not "unauthorized" as required by § B.10 of the Terms. ECF 9-1 at 5–8. Navy Federal argues that Hedden authorized Doe's access by accepting the push notifications pursuant to which Doe accessed her account. Id. at 8. But Hedden alleges that even before this purported authorization, Doe had already called Hedden from Navy Federal's customer service number, accessed to Hedden's checking account, changed her Navy Federal App password, and applied for a Loan in her name. ECF 10 at 9; Am. Compl. ¶¶ 14, 18, 23, 25–26.

7

Hedden also argues that Navy Federal's failure to halt the transactions was a breach of the duty of good faith and fair dealing. Am. Compl. ¶¶ 9–11; ECF 10 at 9. Navy Federal argues that Hedden's breach of the duty of good faith and fair dealing argument fails because the contract imposed no affirmative requirement on Navy Federal to detect or prevent fraud, and that it has in fact disclaimed such a duty. ECF 9-1 at 8. Hedden retorts that this disclosure does not shield Navy Federal from liability since it failed to sufficiently investigate and stop the fraud and denied Hedden's right to access further information. ECF 10 at 10.

This Court declines, at this time, to credit Navy Federal's argument that Hedden authorized Doe's access to her account by accepting the push notifications and that her subsequent transfer of the Loan proceeds was authorized. Hedden has plausibly pled that Doe's access to Hedden's account was unauthorized—based on facts alleging that Doe called Hedden from Navy Federal's customer service number, changed her Navy Federal App password, and applied for a Loan without her involvement—and that Hedden's transfer of funds resulted from Doe's unauthorized application for the Loan. ECF 10 at 9; Am. Compl. ¶¶ 14, 18, 23, 25–26. It seems hardly fair to conclude at this stage of the litigation that Doe's access to Hedden's account was authorized where, as pled, the actions Hedden took were guided by Doe under the guise of Navy Federal authority. Hedden stated a claim for breach of contract. Navy Federal's motion to dismiss Count II is denied.

### C. **Hedden's Negligence Claim Is Not Barred By The Gist Of The Action Doctrine**

Count IV, pled in the alternative to Count II, alleges negligence against Navy Federal. Am. Compl. ¶ 103. Navy Federal argues that Hedden's negligence claim fails because (1) it is precluded by the gist of the action doctrine and (2) Navy Federal owed Hedden no duty. ECF 9-1 at 9–10. Hedden argues that the gist of the action doctrine does not bar her negligence claim since it was pled in the alternative to her contract claim. ECF 10 at 11.

The gist of the action doctrine bars a tort claim where the claim is essentially "a claim against the party for breach of its contractual obligations." Bruno v. Erie Ins. Co., 630 Pa. 79, 106 A.3d 48, 53 (Pa. 2014). To determine whether the gist of the action is a breach of contract or a tort, courts look to the nature of the defendant's purported duty. See Sales Benchmark Index LLC v. DeRosa, 2018 WL 3918090, at *4 (E.D. Pa. Aug. 2018) (Savage, J.) (citing Bruno, 106 A.3d at 63). Where the duty is defined by a contract and the dispute is about whether a defendant did something he was contractually required to do, the plaintiff is limited to contractual damages. See SEI Invs. Glob. Funds Servs. v. Citibank, N.A., 100 F. Supp. 3d 447, 453 (E.D. Pa. 2015) (Beetlestone, J.). Alternatively, if the duty arises out of a "broader social duty owed to all individuals, which is imposed by the law of torts and, hence exists, regardless of the contract," then a cause of action sounding in tort lies. Bruno, 106 A.3d at 68–69.

Of the duties noted in Hedden's Amended Complaint for this cause of action is Navy Federal's failure to stop the disbursement of the Loan after it was on notice that the Loan was procured through fraud. Am. Compl. ¶ 123. This duty is "imposed by the law of torts and, hence exists, regardless of the contract." Bruno, 106 A.3d at 68–69. Thus, because Hedden's negligence claim seems to be predicated on Navy Federal's failure to cancel, suspend, or reverse the disbursement and transfer of the Loan proceeds—which is not a duty imposed by the Terms—Hedden has plausibly pled a claim for negligence which this Court determines, based on the facts alleged, seems to not be barred by the gist of the action doctrine. Am. Compl. ¶¶ 119–24; ECF 6-1, Ex. A to Am. Compl. Navy Federal's motion to dismiss Count IV is denied.

### D. Hedden Has Not Stated an Alternative Claim for Fraud

Count VI alleges fraud against Navy Federal. Am. Compl. ¶¶ 111–18. Hedden alleges that Doe was a Navy Federal agent or employee and that through his misrepresentation, Navy Federal intended to induce Hedden to transfer the proceeds out of her checking account and knew

that Doe was not actually investigating a fraudulent transaction. Id. Navy Federal argues that Hedden's fraud claim is barred by the gist of the action doctrine and is insufficiently plead. ECF 9-1 at 10. Hedden asserts that the purportedly fraudulent acts do not directly concern the performance of a contractual duty and thus are not barred by the gist of the action doctrine. ECF 10 at 12–13. Hedden also asserts that Doe may have been a Navy Federal employee, rendering Navy Federal liable for his actions. Id. Navy Federal highlights that the possibility that Doe is an employee of Navy Federal is insufficient to plead fraud, and that in any case, Hedden did not plead that Doe was purportedly acting in furtherance of his employment. ECF 11 at 6.

A cause of action for fraud requires a material misrepresentation or concealment made with knowledge of its falsity or recklessness as to whether it is true or calculated to deceive, with the intent of misleading another into reliance, where there is justifiable reliance and injury proximately caused by the reliance. See SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 205 (3d Cir. 2022). But as Hedden's own briefings point out, Hedden notes that it is merely *possible* that Doe was a Navy Federal employee or agent. ECF 11 at 6. Hedden does not allege that it was plausible. Because Hedden makes no factual allegations to plausibly support the assertion that Doe is a Federal Navy employee or agent, Navy Federal's motion to dismiss Count VI is granted. See Brearey v. Ramsahai, 2024 WL 2848297, at *2 (E.D. Pa. June 5, 2024) (Kenney, J.) (dismissing case where allegations lacked "substance to push them over the line from possible to plausible").

### E. Hedden States a Claim for Aiding and Abetting Fraud

Count VII alleges that Navy Federal aided and abetted Doe's fraud because once Hedden spoke to an actual Navy Federal Representative, Navy Federal had actual knowledge that the Loan was fraudulent, but nonetheless processed the disbursement and transfer. Am. Compl. ¶¶ 119–124. Navy Federal argues that Count VII should be dismissed because (1) it is a tort claim and thus barred by the gist of the action doctrine and (2) Navy Federal had no actual knowledge of the

alleged fraud.  ECF 9-1 at 12–13.  Hedden asserts that the aiding and abetting fraud claim is collateral to the performance of the underlying contract.  ECF 10 at 14.  Navy Federal argues that because Hedden called Navy Federal after the purported fraudulent, loan and transfer, Navy Federal did not have actual knowledge of the fraud before its commission.  ECF 11 at 6–7.

A cause of action for aiding and abetting fraud requires "(1) a fraudulent misrepresentation; (2) knowledge of the fraud by the aider and abettor; [and] (3) substantial assistance or encouragement by the aider and abettor in committing the fraud."  Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc., 294 F. Supp. 3d 369, 385 (E.D. Pa. 2018) (DuBois, J.).  To be liable for aiding and abetting fraud, the defendant must have had actual knowledge of the underlying fraud.  Van Horn, Metz & Co. v. JPMorgan Chase & Co., 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024) (Scott, J.) (citing Marion v. Bryn Mawr Tr. Co., 288 A.3d 76, 89 (Pa. 2023)).

Hedden's allegations plausibly allege each element of this cause of action.  Specifically, the Court credits Hedden's argument that once Hedden called Navy Federal, it had actual knowledge that the Loan was fraudulently obtained, and nonetheless processed the disbursement and transfer.

Moreover, Navy Federal's purported duty to cease the disbursement and transfer once it had knowledge of the actual fraud is "imposed by the law of torts and[] hence exists, regardless of the contract."  Bruno, 106 A.3d at 68–69.  Thus, because Hedden's aiding and abetting fraud claim seems to be predicated exclusively on Navy Federal's failure to cancel, suspend, or reverse the disbursement and transfer of the Loan proceeds—which is not a duty imposed by the Terms—Hedden has plausibly pled a claim for aiding and abetting fraud which is not barred by the gist of the action doctrine.  Am. Compl. ¶¶ 119–124; ECF 6-1, Ex. A to Am. Compl.  Navy Federal's motion to dismiss Count VII is denied.

### F. Hedden States a Claim for the Truth in Lending Act

Count VIII of the Amended Complaint alleges that Navy Federal violated the Truth in Lending Act ("TILA") by failing to disclose the terms of the Loan to Hedden before the consummation of the Loan. Am. Compl. ¶¶ 126–30. Navy Federal argues that Hedden does not show that she relied on an inaccurate or incomplete disclosure as is required by the TILA and suffered no loss. ECF 9-1 at 14–15. Hedden retorts that Navy Federal failed to disclose the credit terms to Hedden before consummating the Loan, as is required by TILA, and that statutory damages under TILA do not require a showing of reliance. ECF 10 at 15–16.

Under TILA, a creditor is required to disclosures to a borrower clearly and conspicuously in writing before the creditor-borrower relationship. See Weichsel v. JP Morgan Chase Bank, N.A., 65 F.4th 105, 108–09 (3d Cir. 2023). "[T]he disclosures must be made before credit is extended to the consumer." In re Ralls, 230 B.R. 508, 515 (Bankr. E.D. Pa. 1999) (citing 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(b)).

If the Loan was not consummated, the TILA does not provide a cause of action for Hedden. See Speicher v. Rocket Mortg., LLC, 2023 WL 3867895, at *1 (E.D. Pa. June 7, 2023) (Leeson, J.) ("Since the loan was never consummated, Plaintiffs are foreclosed from bringing a TILA claim as a matter of law."); 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(b)). However, until a determination is made regarding the consummation of the Loan, Hedden has plausibly pled a TILA claim. Navy Federal's motion to dismiss Count VIII is denied.

### G. Hedden States a Claim Under the Fair Debt Collection Practices Act

Count IX asserts a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a) ("FDCPA"). Hedden alleges that Navy Federal controls a wholly owned subsidiary that collects debts on its behalf and through which it withdrew a payment from Hedden's account in the amount

of the Loan proceeds. Am. Compl. ¶¶ 134–37. Navy Federal argues that as a creditor collecting in its own name, it is not subject to the FDCPA. ECF 9-1 at 15–16.

The FDCPA requires that a claim be against a debt collector. See Barbato v. Greystone All., LLC, 916 F.3d 260, 261 (3d Cir. 2019) (citing 15 U.S.C. § 1692(a)(6)); ECF 9-1 at 15–17. "Creditors"—entities that offer credit or to whom a debt is owed—are generally not subject to the FDCPA. Tepper v. Amos Fin., LLC, 898 F.3d 364, 366 (3d Cir. 2018) (citing 15 U.S.C. § 1692(a)(4)). But Hedden's allegations about a unilateral withdrawal of payment through a debt-collecting Navy Federal subsidiary, id. ¶ 135, nudge her claim of an FDCPA violation "across the line from conceivable to plausible." Twombly, 550 U.S. at 570; Tepper, 898 F.3d at 366 (noting liability under 15 U.S.C. § 1692(a)(6) where a creditor uses "any name other than his own which would indicate that a third person is collecting or attempting to collect such debts"). Hedden plausibly states a claim for relief under the FDCPA, which may be fleshed out through discovery. Navy Federal's motion to dismiss Count IX is denied.

V.     **CONCLUSION**

Navy Federal's motion to dismiss the Amended Complaint is **GRANTED in part** and **DENIED in part**. This Court hereby **DISMISSES with prejudice** Count VI. An appropriate **ORDER** follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-3254 Hedden v. Navy Federal Credit Union\24-3254 Memorandum on Motion to Dismiss.docx